**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**LISA MICHELLE HARMON,**

    **Plaintiff,**

    v.                                                                         Case No. 17-CV-1762

**WISCONSIN REGIONAL TRAINING PARTNERSHIP,**

    **Defendant.**

---

### AMENDED[1] ORDER GRANTING DEFENDANT'S MOTION TO ENFORCE THE VERBAL SETTLEMENT AGREEMENT

---

Lisa Michelle Harmon filed an employment-discrimination action against her former employer, the Wisconsin Regional Training Partnership ("WRTP"). The parties negotiated a verbal settlement of this suit in October 2018. After Harmon refused to sign the written agreement formalizing the terms of the settlement, WRTP filed a motion to enforce the verbal settlement agreement. For the reasons explained below, WRTP's motion is granted.

### BACKGROUND

On December 19, 2017, Harmon filed an employment-discrimination action against her former employer, supervisors, union, and union representatives. (*See* Complaint, Docket # 1.) The matter was randomly assigned to U.S. Magistrate Judge David E. Jones. Judge Jones screened Harmon's complaint under 28 U.S.C. § 1915 and identified several problems that needed correcting. (*See* Order Directing Plaintiff to Submit Amended Complaint, Docket

---

[1] The original order granting the defendant's motion to enforce the verbal settlement agreement incorrectly ordered the clerk's office to enter judgment. As this case terminated via a settlement agreement, no judgment is necessary.

# 7.) Harmon, who at the time was representing herself, filed an amended complaint that named her former employer, the WRTP, as the only defendant. (*See* Amended Complaint, Docket # 8.)[2] All parties consented to magistrate-judge jurisdiction. (*See* Consent to Proceed Before a Magistrate Judge, Docket #s 4, 13 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)).) The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

Harmon eventually found an attorney to represent her. The attorney filed another amended complaint, alleging that WRTP violated Harmon's rights under Title VII of the Civil Rights Act of 1964 by treating her less favorably, disciplining her, and terminating her employment, all because of her race and in retaliation for engaging in protected activity. (*See* Second Amended Complaint, Docket # 35.) The parties jointly agreed to early mediation (*see* Minute Sheet for Telephonic Scheduling Conference, Docket # 31), and the matter was randomly referred to U.S. Magistrate Judge William E. Callahan, Jr., for settlement purposes, (*see* Order Referring Case for Mediation, Docket # 32).

The parties appeared before Judge Callahan for a settlement conference on October 24, 2018. (*See* Settlement Conference Minutes, Docket # 37.) After several hours of negotiating, the parties reached a verbal agreement. Judge Callahan recited the general terms of the agreement in court on the record:

> THE COURT: It's my understanding the parties have successfully mediated this case. What I intend to do is set forth what I understand the general terms of the agreement to be. The defendant has agreed to pay to the plaintiff and her lawyer the total sum of ▮▮▮▮ to settle the case, that includes attorneys' fees and costs. Other terms that the parties have agreed to is a mutual non-disparagement agreement, confidentiality. There'll be a full release of all claims. The plaintiff has agreed not to seek reemployment with the defendant.

---

[2] She also filed a separate lawsuit against her former union. *See Harmon v. Int'l Ass'n of Machinists & Aerospace Workers Dist. 10 AFL-CIO Union Lodge No. 66*, Case No. 2:18-cv-00074-NJ (E.D. Wis.).

> I should also state that it's my understanding that the defendant's brother and sister, who are here and are aware of the terms of the agreement, while they will not be a direct party to the confidentiality agreement between the parties litigating this matter, they have agreed to sign a side agreement with the plaintiff representing that they will not reveal the terms of the agreement.
>
> I want to also say that it's my understanding the plaintiff is concerned - - the plaintiff has another case against the union. I'm not exactly sure what all that involves, but it's my understanding that everybody understands that the settlement of this case does not resolve that case, and the plaintiff will still be pursuing -- or could pursue if she still wishes to the claim against the union.
>
> That's my understanding of the terms.

(Transcript of Mediation at 3:14–4:14, Docket # 45-2.) The parties further clarified that they agreed to a non-admissions clause, a neutral reference, and a modification of Harmon's records to reflect that she had resigned rather than been terminated. (*See id.* at 4:15–6:20.) Judge Callahan then asked Harmon if he "set forth the agreement generally correctly." (*Id.* at 6:21–22.) Harmon responded, "Yeah. I was just happy that they clarified that (indiscernible). So, yes." (*Id.* at 6:23–24.) Judge Callahan subsequently referred the matter back to Judge Jones for final processing. (*See* Settlement Conf. Mins.)

A week after the settlement conference, Harmon fired her lawyer. (*See* Minute Sheet for Telephonic Motion Hearing Re: Motion to Withdraw, Docket # 39.) She then filed a letter indicating that she decided not to sign the written settlement agreement drafted by defense counsel. (*See* Plaintiff's Motion to Revoke Verbal Mediation Settlement, Docket # 40; *see also* Declaration of Matthew R. Robbins Exhibit A, Docket # 44-1.) Harmon also requested to revoke the verbal settlement agreement and to proceed with her case against WRTP. Judge Jones denied Harmon's motion. (*See* Order Denying Plaintiff's Motion to Revoke Verbal Mediation Settlement, Docket # 54.) Harmon appealed Judge Jones's decision (Plaintiff's Motion to Appeal Judgement Decision Denying Plaintiff's Motion to Revoke Verbal

3

Mediation Settlement, Docket # 58), but the Seventh Circuit dismissed her interlocutory appeal for lack of jurisdiction (USCA Mandate, Docket # 62).

The case was reassigned to me in October 2019, and the parties consented to my jurisdiction (*see* Consent to Proceed Before a Magistrate Judge, Docket #s 56, 57). At a scheduling conference held on January 22, 2020, I denied Harmon's oral motion to reconsider Judge Jones's decision. (*See* Minute Sheet, Docket # 71.) On January 31, 2020, WRTP filed a motion to enforce the verbal settlement agreement and a memorandum in support of its motion. (*See* Docket #s 72, 73.) Harmon filed a brief in opposition to the motion on February 24, 2020. (*See* Plaintiff's Response, Docket # 75; Plaintiff's Brief, Docket # 75-1.)

## ANALYSIS

As Judge Jones correctly determined in his decision denying Harmon's motion to revoke the settlement, the parties' October 24, 2018 verbal settlement agreement is binding under Wisconsin law. *See* Wis. Stat. § 807.05 (indicating that an agreement is binding if it is "made in court . . . and entered in the minutes or recorded by the reporter). The terms of the settlement were negotiated in a confidential settlement conference, and the parties were brought into open court to recite the agreed terms. Harmon sought clarification about how the settlement impacted her case against the union, but she otherwise confirmed that Judge Callahan had accurately recited the terms of the agreement. Moreover, the minute sheet indicated that a settlement had been reached and that the case would be dismissed once the appropriate settlement documents were executed. Based on my review of the record, I am satisfied that the parties had a meeting of the minds as to all material terms and that Harmon knowingly and voluntarily entered into the verbal settlement agreement.

4

Harmon admits that she agreed to the verbal settlement but nevertheless argues that the proposed written agreement contains inaccurate terms and terms that were not discussed at the settlement conference. (Pl.'s Resp. at 2; Pl.'s Br. at 3–4.) Harmon did not make her acceptance contingent on approval of a written instrument, *see Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506–08 (7th Cir. 2007), and the settlement conference transcript does not reflect that there were any open material terms to be negotiated. Thus, any issues with the proposed written agreement are immaterial to the validity of the verbal agreement reached at the settlement conference.[3]

Harmon also argues that she exercised her right under the proposed written agreement to revoke the verbal settlement agreement. (Pl.'s Resp. at 2–3; Pl.'s Br. at 3–6.) The exact language of the written agreement states as follows:

> **4. Waiver of Rights and Claims under the Age Discrimination in Employment Act.** Harmon acknowledges and agrees that since she is at least forty (40) years of age, she is covered by the provisions of the Age Discrimination in Employment Act ("ADEA") and the Older Workers Benefit Protection Act ("OWBPA"). Harmon is also advised that as of the date this Agreement was delivered to her, she has a period of twenty-one (21) days in which to review and execute this Agreement ("Review Period"). Harmon is also advised that, after executing this Agreement,[ ]she has an additional seven (7) days in which to revoke this Agreement ("Revocation Period"). Harmon's execution of this Agreement shall constitute and be considered a waiver of any days remaining in the Review Period. The terms of this Agreement will become effective upon the expiration of the Revocation Period ("Effective Date of this Agreement"). Harmon understands that if she revokes this Agreement, the Payment agreed to by Harmon will be forfeited and the terms and conditions of this Agreement will become null and void and unenforceable by Harmon.

(Robbins Decl. Ex. A at 2–3.) Harmon asserts that she received a copy of the proposed written agreement on November 6, 2018. (Pl.'s Resp. at 2.) Two days later, she informed defense

---

[3] If Harmon has issues with the terms of the proposed written agreement, then the remedy is to negotiate and, if necessary, revise those terms.

counsel via email that she would not be signing the written agreement, and on November 11, 2018, Harmon emailed Judge Jones's courtroom deputy a copy of a letter indicating that she wanted to revoke the verbal settlement agreement. (*See* Plaintiff's Affidavit Exhibits 1 & 2, Docket # 76-1 at 10–18.) Therefore, according to Harmon, she timely exercised her right to revoke the verbal agreement according to paragraph 4 of the written agreement.

The case Harmon cites in support of this argument, *Pompeo v. Exelon Corp.*, actually supports enforcement of the verbal settlement agreement. In *Pompeo*, a magistrate judge recommended denial of the defendant's motion to compel the plaintiff to sign a written settlement agreement—despite the existence of a binding oral settlement—finding that the plaintiff had exercised her right to revoke the agreement under a waiver clause similar to paragraph 4 here. *Pompeo v. Exelon Corp.*, Case No. 12 C 10098, 2014 U.S. Dist. LEXIS 20062, at *6–9 (N.D. Ill. Feb. 19, 2014). However, the district judge rejected that recommendation because the plaintiff had refused to sign the written agreement; thus, the written agreement was "not an enforceable contract under Illinois law." *Id.* at *11–12.

Like the plaintiff in *Pompeo*, Harmon has explicitly refused to sign the proposed written settlement agreement. Consequently, that agreement—which includes the review and revocation periods Harmon seeks to rely upon—is not an enforceable contract under Wisconsin law. *See NBZ, Inc. v. Pilarski*, 520 N.W.2d 93, 96 (Wis. Ct. App. 1994) (citation omitted) ("It is hornbook law that 'offer,' 'acceptance' and 'consideration' are elements of an enforceable contract."). Harmon therefore remains bound by the terms of the verbal settlement agreement.

Finally, Harmon argues that one of the terms of the settlement agreement is invalid. (Pl.'s Br. at 6–7.) In both the verbal and written agreements, WRTP agreed to modify

6

Harmon's employment records to reflect that she had resigned, and not been terminated from, her position. Harmon asserts that compliance with this term would subject her to criminal liability, as she sought and received unemployment insurance benefits based on the alleged wrongful termination. I doubt that the facts here would satisfy the scienter requirement of Wisconsin's statute concerning unemployment insurance fraud. *See* Wis. Stat. § 108.24(1)(a) ("Any person who *knowingly* makes a false statement or representation to obtain any benefit payment under this chapter . . . may be penalized as provided in par. (b).") (emphasis added). Even if they could, that does not necessarily provide grounds for not enforcing the verbal agreement. In other words, the remedy for disagreement with terms of the written agreement is not revocation of the verbal agreement. Rather, Harmon could seek to sever or modify the employment records term; indeed, it seems likely that it was included for Harmon's benefit in seeking other employment.

## CONCLUSION

For all the foregoing reasons, I will grant WRTP's motion to enforce the verbal settlement agreement.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Defendant's motion to enforce the verbal settlement agreement (Docket # 72) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 28th day of February, 2020.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge